H. B. SANBORN v. JOHN MURPHY ET AL.

No. 96.

**1. Issue of Fact.**

A finding of fact by Court of Civil Appeals will not be inquired into by this court on error, where it is not claimed that there is no evidence to support the finding . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 441

**2. Parol Contemporaneous Agreements Affecting Written Contract.**

A parol contemporaneous agreement intentionally omitted from a written contract can not be pleaded to alter the written by incorporating into it such parol contract . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 441

**3. Immaterial Error.**

Where it does not appear that time was of the essence of a contract, the admission of illegal or exclusion of legal testimony affecting a short delay in entering upon the performance is immaterial; especially so when such delay was condoned by the adverse party . . . . . . . . . . . . . . . . . 442

**4. Statute of Frauds—Rescission of Conveyance of Land.**

The general principle that cancelling, altering, or redelivering the title deeds of corporeal interests in lands does not operate to revest the land in the grantor, is too familiar to require the citation of authorities. Brown's Statute of Frauds, sec. 59 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 443

**5. Same—Equities.**

See facts held not to bring the case within any of· the exceptions to the general rule of the law, nor showing equities calling upon a court to interfere . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 445

**6. Right to Plead Statute of Frauds.**

Plaintiff sued to recover certain town lots. The defendants interposed as defense a contract by the plaintiff to convey them, under which contract the defendants held. Plaintiff sought to avoid the contract by showing a parol rescission of it. *Held*, that the defendants could urge the invalidity of·the rescission by parol under the statute . . . . . . . . . . . . 446

ERROR to Court of Civil Appeals for Second District, in an appeal from Potter County.

*Holland & Holland*, for plaintiff in error.—1. The contract between Brooks and Sanborn and the one between Brooks and the defendants are separate and distinct contracts, and therefore the defendants are strangers to the Brooks and Sanborn contract, and can not sue to enforce it. McCarthy v. Couch, 33 N. W. Rep., 777; Jones v. George, 61 Texas, 345.

2. Though a consideration be shown in the face of a deed to land, yet it is competent to show a different consideration than the one expressed by parol. The contract does not bind Brooks to do anything whatever, but what he is expected to do is expressed as the consideration for Sanborn's promise. Eborn v. Cannon, 32 Texas, 232; Glenn v̇. Matthews, 44 Texas, 400; Cuney v. Bell, 34 Texas, 177; Gibson v. Fifer, 21 Texas, 260; Wil-

liams v. Talbot, 27 Texas, 159; Howards v. Davis, 6 Texas, 174; Flynn v. Flynn, 68 Mich., 20; Collar v. Collar, 75 Mich., 414; Bruce v. Slemp, 82 Va., 352; Railway v. Finnell, 116 Ind., 414; Nazro v. Ware, 38 Minn., 443; Murdock v. Cox, 118 Ind., 266; Moses v. Hatfield, 27 S. C., 324; Calvert v. Nichols, 26 S. C., 304; Renton v. Monier, 77 Cal., 449.

3. Parol contemporaneous evidence is inadmissible to vary or contradict the terms of a valid written instrument, but this rule does not apply in cases where the original contract was verbal and entire, and a part only of it was reduced to writing. The pleadings of plaintiff show that there was a verbal and entire contract existing between plaintiff and H. H. Brooks, and that only a part of the same was reduced to writing, and only that part made necessary by the statute of frauds. 1 Greenl. on Ev., sec. 284a; Cox v. Bray, 28 Texas, 259; Thomas v. Hammond, 47 Texas, 42; Westmoreland v. Carson, 76 Texas, 619; Thurston v. Ludwig, 67 Am. Dec., 328; Cummings v. Barber, 99 N. C., 332; Blackerby v. Ins. Co., 83 Ky., 574; Jackson v. Mott, 76 Iowa, 264.

4. At any time after a written contract has been entered into, the parties may orally, on a fresh consideration, vary or abrogate it; and this is so even of a contract required by the statute of frauds to be reduced to writing. Bish. on Con., secs. 174, 1241, and authorities; 1 Greenl. on Ev., Redf. ed., sec. 304; Self v. King, 28 Texas, 552; McCreery v. Day, 16 Am. St. Rep., 793; Flemming v. Gilbert, 3 Johns., 530; Lattermore v. Harsen, 14 Johns., 330; Dearborn v. Cross, 7 Cow., 48; Allen v. Jaquish, 21 Wend., 633; Kromer v. Heim, 75 N. Y., 574; Johns v. Reid, 9 Mass., 78; Blood v. Enas, 38 Am. Dec., 363; Wheeden v. Fish, 50 N. H., 125; Green v. Wells, 2 Cal., 584; Murray v. Harway, 56 N. Y., 337; Robertson v. Page, 3 Russ., 114; Gorman v. Salisbury, 1 Vern., 240; Bell v. Howard, 9 Mod., 305; Lawer v. Lee, 42 Pa. St., 165; Paul v. Miservy, 58 Me., 419; Pratt v. Morrow, 100 Am. Dec., 381; Babcock v. Huntington, 9 Ala., 869; Keating v. Price, 1 Johns. Ch., 22; Low v. Treadwell, 12 Me., 441; Monroe v. Perkins, 9 Pick., 298; Viele v. Ins. Co., 96 Am. Dec., 83; Arrington v. Porter, 47 Ala., 714; Guthrie v. Thompson, 1 Ore., 353.

And so far as the contract remains executory, the agreement to annul on one side is consideration for such agreement on the other. City of Memphis v. Brown, 20 Wall., 289; Collyer v. Moulton, 9 R. I., 90; Alden v. Thurber, 149 Mass., 271.

5. Equity will not allow the statutes of fraud to be used as an instrument of fraud. Pome. Eq. Jur., secs. 431, 921, 1293.

6. Although an oral agreement to rescind a contract for sale of lands may be such as a court of equity will not specifically enforce, it is a good ground for refusing to enforce the original contract. Perry v. McLain, 5 So. Rep., 518.

7. The statute of frauds is operative to defeat a verbal contract only when interposed by one of the parties to the contract. Railway v. Settegast, 79 Texas, 261; Brakefield v. Anderson, 87 Tenn., 206.

*Browning & Madden,* for defendants in error, cited: Wright v. Thompson, 14 Texas, 558; Burleson v. Burleson, 28 Texas, 412; Secrest v. Jones, 21 Texas, 121; Wooters v. Railway, 54 Texas, 294; Bruner v. Strong, 61 Texas, 555; Belcher v. Mulhall, 57 Texas, 17; Lynch v. Ortlieb, 70 Texas, 727; Self v. King, 28 Texas, 552; 1 Greenl. on Ev., 275; Rev. Stats., art. 2464; Masterson v. Little, 75 Texas, 682; Sprague v. Haines, 68 Texas, 215.

BROWN, ASSOCIATE JUSTICE.—H. B. Sanborn sued John Murphy, J. N. Thomason, J. N. Weisner, and Cora Weisner in trespass to try title, to recover block 88 in the town of Amarillo, Potter County. Murphy disclaimed, and the other defendants filed an answer claiming the land through H. H. Brooks under a contract in writing, signed by the plaintiff and H. H. Brooks on the 16th day of January, 1889, which is, in substance, as follows: It recites, that in consideration that Brooks or his agent shall publish a newspaper on section 169, known as the Glidden & Sanborn Addition to the town of Amarillo, for the term of one year, the actual publication to begin in February, the said Sanborn agrees to give to Brooks, or his order, a good warranty deed for block 88 in said addition, and all the excess in said section that may be south of said block 88 to the south line of the section. If Brooks published the paper six months, he was to receive deed for the east half of the block and the excess; if he published it for nine months, he was in addition to have deed for lots 4 and 7; and if he published it for twelve months, then he was to have deed for the remainder of the block, being lots 5 and 6. The newspaper to be a weekly, not less than six columns.

Defendants alleged that the contract was recorded on the 20th of March, 1889, and that Brooks had complied with its terms, and on the 12th day of November, 1889, conveyed the block to them.

Cora Weisner died, and her infant daughter, Cora Brooks Weisner, was made defendant, H. H. Brooks and J. N. Browning being appointed guardians ad litem for her.

Sanborn filed a third supplemental petition in reply to defendants' answer, in which he alleged, in substance, that he and H. H. Brooks had a parol contract relative to matter set up in defendant's answer, and that to secure Brooks in the enforcement of the contract, a memorandum was drawn up by Brooks and signed by him (Sanborn), binding him to make Brooks a deed to block 88; but it was not intended that the written memorandum should embrace all of the contract, and that it did not so embrace it; but the supplemental petition alleges nothing in addition to what

is mentioned in the contract as undertakings on Brooks' part. It does allege that Sanborn's object was to induce Brooks to build a house on the lot, and to give his influence in favor of the new town, but it is alleged that the moving of a house on the lots was part of the first agreement. It alleges that Brooks did not comply, but does not state the particulars in which he failed to comply with the conditions of the contract.

Plaintiff further alleged, that on the 29th day of March, 1889, in consideration that Brooks would surrender all right to the block, and surrender to plaintiff the written memorandum, a new contract was made, which is not alleged to have been in parol, but is so treated by all parties and the Court of Civil Appeals. It is alleged that Brooks surrendered the written memorandum to plaintiff, who put it in a safe and kept it. there for the time agreed upon by himself and Brooks. Plaintiff agreed that he would furnish Brooks an office in which to publish the paper for seven months, and that if Brooks would move upon the block the house originally agreed to be placed on the block within a given time, not named in the pleading, he (Sanborn) would still convey the block to Brooks, and that Brooks did not move the house.

It is not alleged, nor does it clearly appear, that the paper charged to have been given up by Brooks was the contract sued upon. From the allegations it would appear that the paper surrendered by Brooks to plaintiff was a different one from that sued upon, especially when considered in connection with the evidence, which shows that the contract. was recorded on the 20th of March, 1889, and was in the possession of the defendants at the time of the trial. It has, however, been treated as being the contract, and we will so regard it.

Defendants filed general demurrer and special exceptions to the supplemental petition, which were sustained by the District Court.

At the trial, Brooks being on the stand, testified, that the reason that. he did not move his material and press into Glidden & Sanborn Addition in February and March was that Sanborn agreed to furnish him an office, and refused to do so. He testified, that he commenced the publication of the paper in the addition in February, and had never missed an issue up to the time of the trial, but that for the first four weeks he set. the most of his type and kept his press in a tent in the old town; on days for printing the paper he loaded the press on a wagon and carried it on the addition where the new town was to be, printed it there, and distributed the paper to such as lived in that addition to the town. Plaintiff offered to prove by the witness that the agreement to furnish the office was in the first contract before the writing was made; which was objected to, and the court excluded the evidence.

Plaintiff presents the case to this court upon the following objections to the decision of the Court of Civil Appeals:

" 1. The court erred in finding as a conclusion of fact, that the num-

bers of the lots in block 88, according to the Plemons Addition plat, were the same and covered the same ground as the correspondingly numbered lots according to the Glidden & Sanborn Addition.

" 2. The court erred in its conclusions of law, in holding that the defendants were so subrogated to the rights of Brooks under the contract pleaded as to enable them to avoid the subsequently made verbal contract for rescission, by excepting thereto on the ground that it was inhibited by the statute of frauds.

" 3. The court erred in holding as a conclusion of law, that the contract relied on by defendants is within the statute of frauds, and can not be rescinded orally.

" 4. The court erred in holding as a conclusion of law, that the contract relied upon by the defendants in this suit does not come within any of the exceptions to the rule which excludes evidence of contemporaneous parol stipulations to vary or contradict its terms.

" 5. The court erred in its conclusions of law, in holding that appellant was not prejudiced by the admission of the testimony complained of in appellant's seventh assignment of error.

" 6. The court erred in its fourth conclusion of law, in holding that appellant's ninth assignment of error is not borne out by the record."

The first of the errors assigned in this court challenges the correctness of the conclusion of the Court of Civil Appeals upon the facts. This will not be inquired into in this court, as it is not claimed that there is no evidence to support the finding.

The fourth ground is intended to question the correctness of the judgment of the Court of Civil Appeals upon appellant's third assignment of error, which complains of the ruling of the District Court in sustaining exceptions to that part of plaintiff's third supplemental petition which set up contemporaneous parol agreements not embraced in the written contract. It is not claimed that the matter set up was omitted by mistake, but on the contrary it is distinctly alleged that it was intentionally omitted from the writing. The exception was properly sustained.

The verdict is in this form: " We, the jury, find for the defendants Cora Brooks Weisner and John N. Weisner the lots claimed by them, and we further find for the defendant J. M. Thomason the lot claimed by him." The pleadings of both parties described the lots as being in Plemon's Addition to the town of Amarillo, and the court properly entered judgment according to the pleadings. The sixth ground was not sustained by the record, and was rightly so held by the Court of Civil Appeals.

The fifth ground of error urged in this court presents for review the action of the Court of Civil Appeals on the seventh assignment of error. H. H. Brooks, a witness for the defendants, had testified, that he began the publication of his newspaper in February, in the new town of Ama-

rillo, that is on Glidden & Sanborn's Addition to the town of Amarillo, and had published it there from that time down to the trial, without missing an issue.

On cross-examination plaintiff proved by the witness, that for the first four issues of the paper his office was in a tent in the old town, and he there set up the type and wrote the most of his editorials; on the day of publication of his paper he put his printing press on a wagon and carried it to the Glidden & Sanborn Addition, and there printed his papers, distributing them to those who lived in that addition.

On re-examination defendants proved by him that the reason that he, Brooks, did not remove his press, type, and material to that addition in February or March was, that Sanborn promised him a house, and refused to furnish it. Plaintiff then asked the witness if the agreement to furnish the office was not a part of the original parol agreement; to which defendants objected, and the court excluded the evidence.

To hold this to be reversible error it must appear to have been material to some issue, or of a character calculated to influence the jury. The contract provides simply that the publication shall begin in February, but it does not appear therefrom that time was of paramount importance. Plaintiff was attempting to build up a town in opposition to one already started, and he desired the newspaper to aid him in the work. According to plaintiff's third supplemental petition, he treated with Brooks about the continuance of the publication of the paper after the month of February had passed, and did not object for the want of compliance with the contract as to time of commencing publication. We do not think that time was of the essence of this contract. Todd v. Caldwell, 10 Texas, 236; Bingham & McCall v. Carr, 21 Texas, 142.

The evidence shows that the paper was published from February on, without objection from plaintiff; that Brooks took extraordinary pains to comply with the contract; and we concur with the Court of Civil Appeals that the admitting of this evidence did not prejudice plaintiff's case. If it had been excluded or had been proved to be a part of the original agreement, the verdict must have been the same.

The second and third grounds of error presented to this court embrace three propositions: 1. Is the contract between Brooks and Sanborn such as the law requires to be in writing? 2. If it is within the statute of frauds, then was it cancelled by the alleged subsequent parol agreement between Sanborn and Brooks? 3. If it was not rescinded as to Brooks, can defendants set up the fact that the subsequent agreement was in parol, to prevent its operating as a rescission of the contract under which they claim? The contract between Sanborn and Brooks is in its terms a contract for the sale of real estate, and comes literally within the provisions of section 4, article 2464, Revised Statutes. Authority is not needed for such a proposition.

The principal question involved in this case is, Do the facts as alleged in the plaintiff's third supplemental petition show a valid cancellation of the contract made between Sanborn and Brooks and relied upon by the defendants? The following extracts from the supplemental petition embody the allegations necessary to an understanding of the question:

"In consideration that H. H. Brooks abandoned any and all rights by him claimed by said original contract, and yielded the possession of the written portion thereof to plaintiff, plaintiff agreed to and with said Brooks, that plaintiff would furnish to him an office in which to print and publish said H. H. Brooks' newspaper in said East Amarillo for a time agreed upon, to-wit, about seven months, by plaintiff and said H. H. Brooks. Plaintiff further agreed with the said H. H. Brooks, that if he (Brooks) would within the time agreed upon (which said time elapsed long before the institution of this suit) move the house that he had originally agreed to place on said fractional block 88 (lots 1, 2, 3, 4, 5, 6, and 7) upon said block, that said plaintiff would in that event still deed to him the lots in question; that thereupon the written memorandum signed by plaintiff, heretofore referred to, was placed in the possession of this plaintiff, and the same was placed by plaintiff in the safe of Burns & Walker, in the town of Amarillo, and was by him there kept until the time agreed upon by plaintiff and said H. H. Brooks; and the said H. H. Brooks having accepted the said new contract, and having occupied the office which plaintiff furnished thereunder for the full time agreed upon between plaintiff and said H. H. Brooks, which said office was of the reasonable value of $20 per month, and the said H. H. Brooks having wholly failed to comply with the terms of his agreement under said new contract, and never having moved said house on said block 88, plaintiff says that neither the said H. H. Brooks nor any of these defendants ever acquired any right whatever under any of said contracts to any of the lands in question."

"The general principle, that cancelling, altering, or redelivering the title deeds of corporeal interests in lands does not operate to revest the land in the grantor, is too familiar to require the citation of authorities." Brown on Stat. of Frauds, sec. 59; Reed on Stat. of Frauds, sec. 782; Dial v. Crain, 10 Texas, 444; Galbreath v. Templeton, 20 Texas, 45; Van Hook v. Simmons, 25 Texas Supp., 323.

Any number of decisions might be cited in support of this doctrine, but it is not deemed necessary.

The case of Galbreath v. Templeton, supra, was not one in which the attempted cancellation was by parol, but the general doctrine is there announced and applied to the facts of that case. The grantee in the deed had given up his deed because it had no clause of warranty, in order to get one with proper covenants, but before the second deed was made one of the grantors had died. Both deeds were made under a power of at-

torney, and the last deed was void. The court said that the first deed remained in full force, because no legal conveyance had taken its place.

Dial v. Crain and Van Hook v. Simmons, cited above, are directly in point. Especially is the latter case, in which, without any consideration, S. C. Simmons made a deed for a lot to his brother, J. P. Simmons; subsequently the deed was destroyed by the consent of both parties, with a view of revesting the title in S. C. Simmons, the deed not having been recorded. After this a judgment was rendered against J. P. Simmons; execution was issued on it, and the lot levied upon and sold as the property of J. P. Simmons. The purchaser at execution sale sued S. C. Simmons for the lot, and it was held that the title remained in J. P. Simmons, and was by the sale under execution conveyed to Van Hook, the purchaser. The allegations of the petition do not make a case so strong as this. In the best view of the transaction for plaintiff, presented by the allegations, it was an effort to set aside a contract in writing for the sale of lands by a parol agreement.

.  In some States it is held, that where a deed is surrendered by the grantor to the grantee, with the purpose that the title shall revest in the grantee, and interests of third parties have not intervened, the surrender will be given effect by estopping the grantor from proving the contents of the deed by parol evidence. Brown on Stat. of Frauds, sec. 60; Reed on Stat. of Frauds, sec. 783; Faulk v. Burns, 1 Green Ch., 252; Bank v. Eastman, 44 N. H., 438. In the case of Galbreath v. Templeton, supra, the court, after stating the general rule, said: "There are exceptions to the rule even at common law, and it may be defeated by considerations or claims of equity." In Van Hook v. Simmons the court said: "It is not necessary at present to consider in what cases the cancellation of a deed will have the effect operating in the nature of a surrender to divest the estate." Are there any "considerations or claims of equity" in this case that will take it out of the general rule? The effect of the allegations of plaintiff's supplemental petition, if true, is to establish this character of transaction. Plaintiff and Brooks entered into a written contract for the sale of the lots to Brooks, which omitted to state that Brooks was to move a house upon the lots. Afterwards Brooks gave up the writing to plaintiff to keep to a certain time, for some purpose not expressed, but it is fairly to be inferred that it was to guaranty his performance of the contract during a time that would satisfy plaintiff of its fulfilment. Plaintiff kept the contract for the time agreed upon, and returned it to Brooks. It is not stated that he returned it, but it is alleged that plaintiff put the contract in a safe and kept it there until the time agreed upon, and it is found in the possession of those claiming under Brooks. Plaintiff makes no charge that it had been taken from his possession improperly, and we can only conclude that he returned the paper at the expiration of the time agreed upon as alleged.

While the supplemental petition alleges an agreement that Brooks surrendered his rights under the contract, it is wholly inconsistent with the other allegations, and we conclude that the effect of the allegation is, that it was not intended that the right which Brooks acquired should be surrendered to and revest in Sanborn. It is expressly alleged that Sanborn was still to make the deed. The fact that the contract was to be kept for a limited time agreed upon is in direct conflict with any idea of absolute surrender.

This state of facts does not bring this case within any of the exceptions to the general rule of the law, nor is there any equity in favor of plaintiff that calls upon a court to interfere in his behalf. The case comes more nearly within the rules laid down in the cases of Bank v. Eastman and Galbreath v. Templeton, cited above, in each of which the deed was given into the possession of the grantor in order to secure a better deed, carrying out the conveyance first made. In this case the contract was given to plaintiff for some such purpose, and he was to convey the lots at last. In the cases cited the courts held that the first deed remained in force until a valid conveyance was given in its stead. Hull v. McDuff, 24 Maine, is also a case in point. In that case the grantee surrendered his deed to the grantor, in order to enable him to secure money which the grantee was not able to pay; but the court held that the title did not revest.

It is not necessary for us to determine in what cases the courts of this State would uphold a parol cancellation of such a contract or deed, if at all, for the reason that there are no circumstances connected with this case which would justify us in departing from the general rule of the law.

The right which Brooks acquired by the contract with Sanborn was not terminated by the alleged parol agreement, but passed by the conveyance of Brooks and wife to their daughter, and from her to Thomason. Defendants had the right to defend their title by invoking the illegality of the defense set up by Sanborn to their title. Masterson v. Little, 75 Texas, 697; Van Hook v. Simmons, 25 Texas Supp., 323.

In Masterson v. Little, supra, the situation of the parties was much as in this case. One William Little made a parol agreement with Masterson, an attorney, to pay him as a fee a certain part of lands in litigation. The suits were won; in the meantime William Little conveyed to John Little. Masterson set up his parol agreement to defeat the title of John Little, which was not claimed to be that of an innocent purchaser. The court held that John Little could claim the illegality of the contract between William Little and Masterson.

In the case of Van Hook v. Simmons, supra, the question was not made nor discussed by the court, but it was necessarily involved. Simmons conveyed a lot to his brother, J. P. Simmons, without consideration, and the deed was not recorded. It was agreed that the deed be destroyed.

After this judgment was entered against J. P. Simmons and the lot sold under this judgment, Van Hook buying under the judgment. He sued S. C. Simmons for the lot, and proved all the facts, upon which the court decided that the title did not revest in S. C. Simmons, and Van Hook was entitled to recover.

In Masterson v. Little the court puts the right of the defendant upon the ground of his privity, but it is equally as well supported upon the ground that the title or right having never vested in the person who claims under the parol agreement, the holder of the title under the lawful contract has the superior right.

The case of Railway v. Settegast, 79 Texas, 261, is not a parallel case to this, nor in conflict with those cited. In that case the plaintiff, Settegast, had leased lots to the Texas Western Railway Company, which had transferred its contract to the Gulf, Colorado & Santa Fe Railway Company, as Settegast claimed, by a parol agreement. Settegast sued to recover possession of the property, and claimed that the assignment by parol was contrary to the statute of frauds; but the court said that he could not set it up. It did not matter to him whether it was a contract binding upon the Texas Western Railway Company or not, for his rights were in nowise affected by it.

In this case the defendants set up a valid title to the land, and plaintiff sought to set aside that title by showing an illegal agreement. The court rightly decided that he could not interpose the unlawful contract. It was not so much permitting the defendants to interpose the statute of frauds, as it was denying to the plaintiff the right to destroy a valid title by an unlawful means. It would be a strange inconsistency to say that defendants could purchase the right of Brooks, which in Brooks was superior to the claim of plaintiff, but that after it was acquired they would not be permitted to defend it against the illegal agreement which plaintiff could not enforce against Brooks. Such is not the law. Persons who are not affected by such contracts are not permitted to set up that they are contrary to the statute of frauds, but defendants were not of that class.

The judgments of the Court of Civil Appeals and of the District Court are affirmed.

*Affirmed.*

Delivered February 26, 1894.