**W. W. CANNON, Appellant,**

v.

**Reese WINGARD et al., Appellees.**

**No. 15952.**

Court of Civil Appeals of Texas.

Dallas.

March 16, 1962.

Rehearing Denied April 13, 1962.

Townsend & Townsend, Dallas, for appellant.

Leslie Jackson, Shank, Irwin & Apeland, Dallas, for appellees.

YOUNG, Justice.

The suit in trial court was to cancel an alleged "mineral lease," evidenced by three instruments, to-wit, a regular oil and gas lease, primary term 10 years, and two min-

eral deeds, contemporaneously executed on April 22, 1947 as part of the same transaction, between the same parties, and for removal of cloud from title; also to cancel two subsequently executed mineral deeds from Mrs. Wilkerson to the Johnstons, conveying an interest in the minerals involved in the earlier dated transaction. W. W. Cannon, appellant, had intervened, having purchased the land from original plaintiffs, Mrs. Myrtle Weaver Lowe and her sister Miss Lula Weaver, and adopted their pleading. The defendants are Reese Wingard, of Eugene, Oregon, Mr. & Mrs. A. L. Wilkerson and W. N. Jones of Forest, Mississippi, and two others cited by publication. The land involved is approximately 300 acres in form of a square situated in Young County, Texas.

In December 1960 defendants filed joint motion for summary judgment, basing same on the three instruments above mentioned, dated April 22, 1947, the stipulations of fact: deposition of Lula Weaver and pleadings of the parties. Intervenor Cannon likewise filed motion for summary judgment on the same instruments, stipulations, deposition and pleading; and additionally the deed from Lula Weaver to W. W. Cannon and deeds to the two Johnstons, cited by publication; both parties (intervenor and defendants) alleging the existence of no genuine issues of fact. The trial court upon hearing entered a judgment granting defendants' motion and denying appellant's motion, holding that the oil and gas lease had expired in accordance with its terms but that the two mineral deeds were valid and subsisting; decreeing that intervenor, Cannon, take nothing by his suit, followed by this appeal.

Material hereto are paragraphs three through seven of the stipulations of fact, to-wit:

"III.

"As means of shortening the record of this case, it is agreed that prior to and on April 22, 1947, Mrs. Myrtle W. Lowe, a widow, and Lula S. Weaver, a feme sole, owned in fee simple absolute, in equal shares, T. E. & L. Survey No. 200, Abstract No. 447, Young County, Texas, subject to oil and gas lease dated April 26, 1944, covering the North one-half of T. E. & L. Co. Survey No. 200, Abstract No. 447, which lease is recorded in Volume 206, Page 122, of the Deed Records of Young County, Texas, and which lease on April 22, 1947, was owned by Warren Oil Company, assignee of the original leasee named in said lease.

"IV.

"That on April 22, 1947, Mrs. Myrtle Weaver Lowe, a widow, and Lula S. Weaver, a feme sole, made, executed and delivered to Reese Wingard, W. N. Jones and Mrs. A. L. Wilkerson (some of the Defendants herein) the following conveyances of record, as part of the same transaction, in the Deed Records of Young County, Texas, to wit: (a) Oil, Gas and Mineral Lease covering the South Half of T. E. & L. Survey No. 200, Abstract No. 447, Young County, Texas, recorded in Volume 220, Page 410; (b) Mineral Deed conveying one-half interest in and to all of the oil, gas and other minerals in and under and that may be produced from the West Half of said T. E. & L. Survey No. 200, Abstract No. 447, Young County, Texas, recorded in Volume 222, page 67. (c) Mineral Deed conveying one-fourth interest in and to all of the oil, gas and other minerals in and under and that may be produced from the East Half of said T. E. & L. Survey No. 200, Abstract No. 447, Young County, Texas, recorded in Volume 222, page 68.

"V.

"That the said Mrs. Myrtle Weaver Lowe formerly worked for the Security National Bank in Dallas and later became a speech writer for third parties, and was on April 22, 1947, 67 years of age; that Mrs. Myrtle Weaver Lowe died testate since the filing of this suit, devising all of her interests, if any, in said T. E. & L. Survey No. 200 to her sister, the plaintiff, Lula S. Weaver; that the estate of the said Mrs. Myrtle Wea-

ver Lowe, deceased, has been administered and closed. That plaintiff, Lula S. Weaver, was 65 years of age on April 22, 1947.

## "VI.

"That the lease referred to in IV (a) above is on a printed form and all type-written insertions therein contained were made by lessor, Mrs. Myrtle Weaver Lowe. That the following language was typed on said lease form by the said Mrs. Myrtle Weaver Lowe prior to its execution and delivery by the lessors therein named to the lessees therein named, to wit: 'The above named Reese Wingard and W. N. Jones and Mrs. A. L. Wilkerson agree to begin to drill an oil well on the tract of land described above within thirty days from this date to bring to completion within 90 days. Unless this above agreement is carried fully as above described this lease becomes null and void or the transaction becomes null and void.'

## "VII.

"That the defendants Reese Wingard, W. N. Jones and Mrs. A. L. Wilkerson did within thirty days of April 22, 1947, in good faith and at their own expense, begin to drill a well for oil on the land described in the aforesaid lease, recorded in Volume 220, page 410, of the Deed Records of Young County, Texas, and prosecuted the drilling thereof in a good and workmanlike manner to a depth between 1066 feet and 1200 feet below the surface, which was the then known depth for the production of oil in the general area of the lands covered by said lease; that said well was completed as a dry hole within ninety days of April 22, 1947, and has neither produced oil, gas or other minerals; that said lessees named in said lease have not drilled any additional wells on the lands covered by said lease, and have never paid any delay rentals as provided in Paragraph 5 of said lease; that said lease has expired in accordance with its terms."

Although not included in above stipulations, it is not disputed that these two min-eral deeds contained a clause subjecting the grant to outstanding oil, gas and mineral leases and that each provides: (see appellees' brief) " 'In the event that the above lease for any reason becomes canceled or forfeited, then and in that event, grantee shall own' in the case of one of the deeds, one-half, and in the case of the other deed, one-fourth, 'of all oil, gas and other minerals in and under said lands, together with a like (one-half and one-fourth, respectively) interest in all bonuses paid, and all royalties and rentals provided for in said oil, gas and mineral leases covering the above described lands.' "

Initially, it is to be noted that the instruments in question (Oil and Gas Lease and Two Mineral Deeds) were executed "as part of the same transaction" and typed into the lease instrument by Miss Lula Weaver was the requirement on part of lessor to "drill an oil well" within 90 days, in default of which the lease becomes "null and void or the transaction become null and void". Unquestionably, the rule regarding the construction of contemporaneous instruments comes into play; appellant quoting from 14 Tex.Jur. § 147, p. 926, "They are then to be construed together, even though the result be to modify one of the instruments which, standing alone, would have a different construction. Thus a deed absolute in form, substance and effect has been held to be wholly conditional, the condition being expressed in a contemporaneous instrument." Appellant in his several points contends that the three instruments executed as part of the same transaction show on their face to be made pursuant to a single purpose, namely, "mineral development", the parties considering them as no more than an oil and gas lease. He argues in this connection that "The language 'the transaction becomes null and void' shows as clearly as any language could that it was the intention of the parties to treat the three instruments as one rather than separately, and by them create only a defeasible fee in the minerals, for the word 'transaction' comprehends and includes the three instruments and treats

them as one; and in the same phrase delimits the title conveyed to a defeasible fee." Undoubtedly however, the parties by the single transaction have created two separate and distinct estates—an oil and gas lease covering the South Half of the tract, on its face defeasible, and two mineral deeds covering other interest in the East one-half and West one-half, on their face indefeasible. And it cannot be said that under the language of the lease alone "the parties considered that the transaction was no more than an oil and gas lease." Hence, we regard as untenable the contention of appellant that the clause in the two mineral deeds which set forth how the minerals are to be owned upon expiration of the lease on another portion of the land should be wholly ignored. That separate instruments conveying separate estates in minerals are not to be construed so as to create a single estate is made plain in the statement of the rule in 12 Am.Jur. Contracts, § 246, p. 783, wherein it is said: "Interpreting contemporaneous instruments together means simply that if there are any provisions in one instrument limiting, explaining, or otherwise affecting the provisions of another, they will be given effect as between the parties themselves and all persons charged with notice so that the intent of the parties may be carried out and the whole agreement actually made may be effectuated. *This does not mean that the provisions of one instrument are imported bodily into another, contrary to the intent of the parties. They may be intended to be separate instruments and to provide for entirely different things.* * * * Where contracts are put into several instruments, each of which has a sensible meaning and may have a full operation by itself, it would be a hazardous assumption to put them together for the purpose of making them mean, as one, differently from what they could in this separate state. Certainly, the court cannot do such violence to the intentions of the parties and the language in which they are expressed as to consolidate separate instruments where the effect of doing so would be to avoid an essential part of the contract." (Emphasis ours.) And in Clement v. Scott, Tex.Civ.App., 60 S.W.2d 258, writ ref. the general principle is stated: "* * * one provision in a contract should not be taken alone and a presumption raised upon it at variance with the other provisions of the contract. Fink v. Brown (Tex.Comm.App.) 215 S.W. 846. Especially so of a reference clause where such presumption would be in conflict with the expressed intention of the parties stated in the contract on the same subject-matter. That construction invalidating the contract will not be favored when its terms are as fairly susceptible of evidencing a legal purpose. 10 Tex.Jur. § 181."

On the other hand as appellees aptly state, had the original plaintiffs intended only to execute and deliver an oil and gas lease it would not have been necessary to execute the two additional instruments. They say: "The three instruments as written cannot be construed as constituting only a single oil and gas lease. Such a contention does violence to the intention of the parties as reflected in the three written instruments, which, under the Stipulation, the original Plaintiffs 'made, executed and delivered' to some of the Appellees. * * The clause in both mineral deeds, which recites 'in the event the above described lease for any reason becomes canceled or forfeited, then in that event, grantee shall own' one-half and one-fourth interest in the minerals in and under the West Half and East Half of said Survey No. 200, respectively, has been passed on many times by our courts; and on each occasion the clause has been held to convey minerals beyond the termination of the existing lease. Richardson v. Hart [143 Tex. 392], 185 S.W.2d 563 (1945) Sup.Ct.; Delta Drilling Co. v. Simmons, 338 S.W.2d 143 (1960) Sup.Ct.; Garrett v. Dils Co. [157 Tex. 92], 299 S.W.2d 904 (1957) Sup.Ct."

Moreover, appellant seeks no relief because of fraud, accident or mistake as evi-

denced by stipulation of the parties and deposition of Miss Weaver; it being stipulated that the original plaintiffs "made, executed and delivered" to some of the appellees "the following conveyances of record * * *". In the same connection Lula Weaver having testified: "Q Did you consider that lease to be a binding contract as written? A Yes. Q And the terms of the lease to be binding upon you and your sister Myrtle? A Yes." Concerning the mineral deed, Miss Weaver testified: "Q Then, the *deed itself would reflect all of the terms and conditions of the deed, wouldn't it? A Yes, sir.*" (Emphasis ours.)

Appellant further contends that the lease obligation "to drill an oil well on the track" was intended by the parties as an oil well *producing oil,* the consideration for the entire project having failed when completed only as "dry hole." [1] Along with above requirements to "drill an oil well" it was stipulated that "within 30 days of April 22, 1947, in good faith and at their own expense begin to drill a well for oil * * * and prosecuted the drilling thereof in a good and workmanship manner to a depth between 1066 feet and 1200 feet below the surface, which was the then known depth for the production of oil in the general area of the lands covered by said lease; that said well was completed as a dry hole within 90 days of April 22, 1947, and has neither produced oil, gas nor other Minerals * * *".

■ Here it is to be observed that the wording of the lease, written by one of the original plaintiffs, does not provide for lessees to bring in the well to completion as a *producing oil well,* but only for lessees to complete the drilling of a well within the prescribed time. Nor does the obligation to complete the well within 90 days constitute an obligation to complete it as a producing well. For as stated in Summers on Gas and Oil, § 687 (Perm.Ed.1938): "Compensation for drilling an oil or gas well may be made contingent upon the discovery of oil or gas in paying quantities, but a contract will not be so construed in absence of a clear expression or implication of such intent by the contract." See also Totah Drilling Company v. Abraham, 64 N.Mex. 380, 328 P.2d 1083. In Pagenkopf v. Phelps, Tex.Civ.App., 253 S.W. 619, a comparatively early case, the Amarillo court permitted a recovery of the balance alleged to be due on a contract to drill an oil well. By the contract plaintiff had agreed "to drill a well for oil"; the court holding there was no warranty as to production and said: "It is contended, also, that the defendants were entitled to a peremptory instruction on the ground that the contract bound plaintiff to bring in a producing well and that having failed to do this they cannot recover on the contract. The courts in construing contracts for the drilling of wells, are not disposed to imply warranties as to production or the quantity and quality thereof. The presence, the quantity, and quality of the substance sought to be obtained by the drilling is a matter not within the driller's power to control, and unless the contract, by express terms or clear implication, makes payment of his compensation dependent upon securing production, the driller will be held to be entitled to his pay when he has drilled the well to the depth required by the contract; * * *." Similarly, in effect were the holdings in Britton v. Cotton States Petroleum Co. (writ ref.) Tex.Civ.App., 283 S.W. 887; Hennessey v. Brewer, Tex. Civ.App., 282 S.W. 617 and Frost v. Martin, Tex.Civ.App., 203 S.W. 72. Other

1. In contrast to above stipulations, the suit of original plaintiffs and intervenor had been based on fraud and misrepresentation; alleging also with respect to the two mineral deeds, that they (original plaintiffs) were elderly women and unlearned in technical terms of the oil business; that they were led to believe that these instruments were royalty deeds to minerals under the lease aforesaid, the true facts being well known to lessees who furnished the forms for conveyances and dictated the terms thereof.

American Jurisdictions have made like rulings involving oil development. See Brown v. Homestake Exploration Corporation, 98 Mont. 305, 39 P.2d 168; Esso Standard Oil Co. v. Nesbitt, 222 La. 661, 63 So.2d 417; Kies v. Williams, 190 Ky. 596, 228 S.W. 40; Berryman v. Sinclair Prairie Oil Co., 10 Cir., 164 F.2d 734.

In a further point, appellant contends it to be undisputed that appellees paid no valuable consideration for the three instruments in question. It is not disputed that lessees obligated themselves to drill an oil well which they did—the lease and mineral deeds having been executed and delivered for this, a valuable consideration. And it is well settled that there is no need for a consideration concerning a duly executed and delivered conveyance. Burgess v. Hatton (writ ref.) Tex.Civ.App., 209 S.W.2d 999; Rogers v. Rogers (Com.App.), 15 S.W.2d 1037.

All points on appeal upon consideration are overruled, and judgment of the trial court is affirmed.